UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HUNTER ENGINEERING CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:08 CV 465 DDN |
| ) | |
| HENNESSY INDUSTRIES, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This action is before the court on the motion of defendant Hennessy Industries, Inc. to show cause. (Doc. 100.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 21.) The court held a hearing, under seal, on January 25, 2010.

**I. BACKGROUND**

On April 7, 2008, Hunter Engineering Co. (Hunter) filed suit against Hennessy Industries, Inc. (Hennessy) for patent infringement. (Doc. 1.) In its complaint, Hunter alleged that Hennessy had infringed two of its patents that related to wheel balancing: Patent No. 6,952,964 (the '964 patent) and Patent No. 7,320,248 (the '248 patent). (Id. at ¶¶ 3-4.) While the parties were engaged in discovery, the court issued a protective order. (Doc. 40.) By its own terms, the protective order was to survive the end of the lawsuit between Hunter and Hennessy. (Id. at ¶ 18.) On April 14, 2009, Hunter and Hennessy settled the lawsuit, and agreed to dismiss the case with prejudice. (Doc. 87.)

While Hunter was settling its case against Hennessy, the company was arbitrating another patent infringement case against Snap-On Incorporated (the Snap-On Arbitration). (Doc. 89, Ex. B.) On June 30, 2009, Robert Davidson, the arbitrator in the Snap-On Arbitration, issued a subpoena to Hennessy, directing Hennessy to produce six types of documents. (Doc. 89, Ex. B at 6.) Hennessy wrote to Davidson, objecting to the subpoena. (Doc. 89, Ex. C.) Among its objections, Hennessy argued that the issuer lacked any jurisdiction over it, and

that the subpoena requested confidential documents that were protected by this court's protective order. (Id. at ¶¶ 2, 7.) On November 12, 2009, this court held that it lacked jurisdiction to enforce the arbitrator's subpoena, but that Hunter could renew its motion in the proper district. (Doc. 99.)

Meanwhile, on November 11, 2009, Hunter's lawyers provided Snap-On's lawyers and the arbitrator with confidential documents (eleven e-mails and one chart) belonging to Hennessy on an "attorneys' eyes only" basis.[1] (Doc. 100, Exs. A, D; Doc. 103, Ex. 1.) In doing so, Hunter's lawyers maintained that Hunter and Snap-On employees would not have any access to the confidential e-mail. (Doc. 100, Ex. A.) Because of this disclosure, Hennessy moved for a rule to show cause, compelling Hunter and its lawyers to appear before the court to explain why they should not be found in contempt for violating the court's protective order. (Doc. 100.) In light of Hennessy's motion, Snap-On's lawyers and the arbitrator have refrained from viewing the twelve documents until the court has issued a ruling. (Doc. 103, Exs. 9, 10.)

## II. MOTION TO SHOW CAUSE

Hennessy moves for a rule to show cause. Hennessy argues that Hunter's disclosure of its confidential documents to two third-parties violated the terms of this court's protective order. It also notes that Hunter continued to use these documents even after the court's ruling on November 12. Hennessy seeks a number of remedies to combat these disclosures. First, it argues that the court should sanction Hunter and its lawyers for using the confidential documents in another action, willfully defying the protective order in place. Second, it seeks attorneys' fees and costs related to this motion and its effort to prevent Hunter's disclosure. Third, it seeks an order preventing Hunter from using any of its protected documents in unrelated proceedings.

---

[1] There is no dispute that these documents were marked confidential and subject to the court's protective order. (Doc. 103 at 5) (acknowledging that "Hennessy had designated these documents 'confidential - for counsel only' under the terms of the Protective Order. . . .").

Fourth, it requests that Hunter and its lawyers return its confidential documents, and file a certificate of compliance with the court. (Docs. 100, 106.)

In response, Hunter argues that the twelve documents in question discuss Hunter's own technology, and could not truly be considered Hennessy's confidential information. It also argues that Hennessy would not be harmed by the strict disclosure guidelines it has proposed. Finally, Hunter argues that a contempt finding is inappropriate because Snap-On's lawyers have not actually seen the documents, and because the protective order is ambiguous. Hunter seeks two remedies in this case. First, it seeks an order declaring that it is not in contempt or in violation of the court's protective order. Second, it seeks to modify the protective order to allow the limited disclosure of the twelve documents at issue. (Doc. 103.)

### III. DISCUSSION

**Violation of the Protective Order**

Courts should construe protective orders in a reasonable and commonsense fashion, so that their prohibitions are connected to their purpose. <u>On Command Video Corp. V. LodgeNet Entm't Corp.</u>, 976 F. Supp. 917, 921 (N.D. Cal. 1997). In this case, the protective order provides, in relevant part,

> **7. Use of Confidential Information**
> Confidential Information shall be used by the receiving party and persons to whom it is disclosed solely in preparation for trial, in conducting such trial, and/or in preparation for and/or conducting any appeal of this action. Confidential Information shall not be used by such party or persons for any business or other purpose. . . . No person who is furnished Confidential Information shall disclose it to any person not entitled under this Stipulated Protective Order to receive it. Nothing herein shall permit the receiving party or person to use Confidential Information for any purpose other than those stated herein.

(Doc. 40 at ¶ 7.)

By its plain language, the protective order states that confidential documents shall only be used <u>in this action</u>, and shall not be used for any other purpose. The protective order further commands

that those receiving the confidential documents shall not disclose the materials to individuals not included in the protective order. (Id.) Arbitrators and attorneys of third-party clients are not included within this list. (Id. at ¶¶ 4-5.)

On November 11, 2009, in connection with the Snap-On Arbitration, Hunter provided the arbitrator and Snap-On's lawyers with documents it obtained from Hennessy that were specifically marked "confidential – for counsel only." (Doc. 103, Ex. 1.) Under the protective order, these documents were (1) not to be used in any other actions, and (2) not to be disclosed to an outside arbitrator or another party's attorneys. (Doc. 40 at ¶¶ 4-5, 7.) Hunter's disclosure clearly violated these two separate provisions of the protective order. See Eagle Comtronics, Inc. v. Arrow Commc'n Labs., Inc., 305 F.3d 1303, 1314 (Fed. Cir. 2002); Kehm v. Procter & Gamble Mfg. Co., 724 F.2d 630, 630 (8th Cir. 1984) (per curiam); see also On Command Video, 976 F. Supp. at 921 (finding plaintiff violated the protective order, which unequivocally barred all uses of the confidential materials beyond the "'issues presented in this litigation.'").

Hunter argues that these confidential documents are old, that they discuss Hunter's own technology, and that they are only a small fraction of the total number of documents Hennessy provided. (Doc. 103 at 1.) The protective order makes no exception for these considerations. The protective order covers "any document . . . which is appropriately designated under the provisions of this Order," and there is no dispute that these twelve documents were appropriately designated as "confidential – for counsel only." (Doc. 40 at ¶ 1) (emphasis added); (Doc. 103 at 5.) Beyond that, it is easy to imagine that a company would want to keep its analysis of a competitor's technology strictly confidential, no matter how old or limited this analysis might be.

Hunter also argues that its disclosure was authorized by ¶ 14 of the protective order. (Doc. 103 at 11.) Paragraph 14 provides,

> **14. Subpoenas**
> In the event any person or party subject to this Order having possession, custody, or control of any Confidential Information receives a subpoena or other process or order to produce such information in a different proceeding or case,

> such person or party shall promptly notify in writing the attorneys of record in this case of the party claiming such confidential treatment of the item, document or information sought by such subpoena or other process or order, shall furnish those attorneys of record in this case with a copy of said subpoena or other process or order, and shall provide reasonable cooperation with respect to any procedure to protect such information or matter as may be sought to be pursued by the party whose interests may be affected. If the party asserting confidentiality makes a motion to quash or modify such subpoena, process or order, unless otherwise ordered by a court of competent jurisdiction, there shall be no disclosure of the subject matter objected to pursuant to the subpoena, process or order until the Court having jurisdiction over the controversy has ruled upon the motion, and then only in accordance with the ruling so made. If no such motion is made despite a reasonable opportunity to do so, any person or party subject to this Order who receives any subpoena or other process or order in a different proceeding or case shall be entitled to comply with such subpoena process or order.

(Doc. 40 at ¶ 14.)

On June 30, 2009, the arbitrator issued a subpoena to Hennessy, requesting the production of certain documents. (Doc. 89, Ex. B at 1.) On July 8, 2009, Hennessy objected to the subpoena, arguing - among other things - that the subpoena was requesting confidential documents covered by the protective order. (Doc. 89, Ex. C at ¶ 7.) In this case, Hennessy was both the party that received the subpoena, and the party claiming confidential treatment of the information.

The first half of ¶ 14, however, contemplates a different set of facts. With its language of "reasonable cooperation" and "promptly notify," this section of the protective order speaks to a situation where the party receiving the subpoena is not the party claiming confidential treatment of the information.

After Hennessy objected to the subpoena, Hunter moved to enforce the subpoena. (Doc. 89.) This court refused to enforce the subpoena on jurisdictional grounds, but noted Hunter could renew its motion to enforce the subpoena in a different court. (Doc. 99.) To date, there is no evidence any court has ordered Hennessy to comply with the arbitrator's subpoena.

The second half of ¶ 14 requires a court order in the face of an objection. "If the party asserting confidentiality makes a motion to

> such person or party shall promptly notify in writing the attorneys of record in this case of the party claiming such confidential treatment of the item, document or information sought by such subpoena or other process or order, shall furnish those attorneys of record in this case with a copy of said subpoena or other process or order, and shall provide reasonable cooperation with respect to any procedure to protect such information or matter as may be sought to be pursued by the party whose interests may be affected. If the party asserting confidentiality makes a motion to quash or modify such subpoena, process or order, unless otherwise ordered by a court of competent jurisdiction, there shall be no disclosure of the subject matter objected to pursuant to the subpoena, process or order until the Court having jurisdiction over the controversy has ruled upon the motion, and then only in accordance with the ruling so made. If no such motion is made despite a reasonable opportunity to do so, any person or party subject to this Order who receives any subpoena or other process or order in a different proceeding or case shall be entitled to comply with such subpoena process or order.

(Doc. 40 at ¶ 14.)

On June 30, 2009, the arbitrator issued a subpoena to Hennessy, requesting the production of certain documents. (Doc. 89, Ex. B at 1.) On July 8, 2009, Hennessy objected to the subpoena, arguing - among other things - that the subpoena was requesting confidential documents covered by the protective order. (Doc. 89, Ex. C at ¶ 7.) In this case, Hennessy was both the party that received the subpoena, and the party claiming confidential treatment of the information.

The first half of ¶ 14, however, contemplates a different set of facts. With its language of "reasonable cooperation" and "promptly notify," this section of the protective order speaks to a situation where the party receiving the subpoena is not the party claiming confidential treatment of the information.

After Hennessy objected to the subpoena, Hunter moved to enforce the subpoena. (Doc. 89.) This court refused to enforce the subpoena on jurisdictional grounds, but noted Hunter could renew its motion to enforce the subpoena in a different court. (Doc. 99.) To date, there is no evidence any court has ordered Hennessy to comply with the arbitrator's subpoena.

The second half of ¶ 14 requires a court order in the face of an objection. "If the party asserting confidentiality makes a motion to

quash or modify such subpoena . . . there shall be no disclosure of the subject matter objected to pursuant to the subpoena" <u>unless ordered by a court</u> of competent jurisdiction. (Doc. 40 at ¶ 14). If there is no objection to disclosure after a reasonable period to do so, the subpoenaed party must comply. In this case, Hennessy promptly objected to the arbitrator-issued subpoena. In light of the arbitration setting, Hennessy's objection by letter, rather than by motion, was sufficient to require Hunter to seek a court order before disclosing any confidential information. <u>See</u> <u>COMSAT Corp. v. Nat'l Sci. Found.</u>, 190 F.3d 269, 276 (4th Cir. 1999) ("[O]nce subpoenaed by an arbitrator the recipient is under no obligation to move to quash the subpoena. By failing to do so, the recipient does not waive the right to challenge the subpoena on the merits if faced with a petition to compel."). Without this court order, Hunter's conduct does not fall within ¶ 14.

Finally, Hunter argues that judicial efficiency encourages parties to allow access to discovery documents in collateral litigation. (Doc. 103 at 9) (citing <u>Foltz v. State Farm Mut. Auto. Ins. Co.</u>, 331 F.3d 1122, 1131 (9th Cir. 2003); <u>Wauchop v. Domino's Pizza, Inc.</u>, 138 F.R.D. 539, 546-47 (N.D. Ind. 1991)). In <u>Foltz</u>, several non-parties, involved in collateral litigation against State Farm, sought to modify a protective order to gain access to discovery material. <u>Foltz</u>, 331 F.3d at 1128-29. When the district court denied the motion to modify the protective order, the non-parties appealed. <u>Id.</u> at 1129. On appeal, the Ninth Circuit remanded to the district court to reconsider the motion to modify. <u>Id.</u> at 1134. In doing so, the appeals court noted that the non-party intervenors were engaged in litigation against the same defendant (State Farm), with allegations substantially similar to those in the underlying litigation. <u>Id.</u> at 1133.

In <u>Wauchop</u>, Domino's sought a protective order to prevent the plaintiff from sharing discovery materials with other non-parties. <u>Wauchop</u>, 138 F.R.D. at 543. In denying part of Domino's motion, the court noted that this lawsuit was just one of several lawsuits against Domino's over car accidents related to the company's thirty-minute delivery guarantee. <u>Id.</u> Given the similarity of the lawsuits, the

court found that collaborative use of discovery materials was consistent with the federal rules. Id. at 546.

Neither case demonstrates that Hunter complied with this court's protective order. Neither case holds that a party may disclose documents subject to a protective order, absent the court's prior approval. Instead, the parties and intervenors in Foltz and Wauchop each invoked federal court jurisdiction to determine the discovery issues in dispute; none of the litigants proceeded unilaterally. Finally, in both Foltz and Wauchop, the parties holding the confidential documents (State Farm and Domino's, respectively) were also parties to the collateral litigation. Hennessy is not a party to the Snap-On Arbitration. Foltz and Wauchop do not establish that Hunter complied with the protective order.

**Return of Confidential Documents**

Hunter violated the terms of the protective order by disclosing confidential Hennessy documents to parties beyond the scope of the protective order. The court orders that Hunter comply with the terms of the protective order, and that it stop using or disclosing Hennessy's confidential documents in unrelated proceedings. In addition, the court orders Hunter to return to Hennessy all of its confidential documents no later than April 19, 2010, and to file a certificate of compliance with the court when it has accomplished this task. See In re Biovail Corp. Sec. Litig., 247 F.R.D. 69, 70 (S.D.N.Y. 2007) (ordering party to return confidential documents after violating a protective order).

Snap-On's lawyers and the arbitrator in the Snap-On Arbitration are encouraged to either destroy the confidential documents they received, or to return these documents to Hennessy. See Iowa Beef Processors, Inc. v. Bagley, 601 F.2d 949, 955 (8th Cir. 1979) (finding that the court could not compel a non-party to return documents covered by a protective order, when the non-party had not violated any court order).

**Civil Contempt**

Courts have the inherent power to punish contempt. Schoenfeld v. Kleiber, No. 07-4020-CV-C-NKL, 2007 WL 3256234, at *2 (W.D. Mo. Nov. 2,

2007). Courts may use this contempt power to compel a defendant to comply with a court order, to compensate the complainant for losses sustained, or to do both. Chicago Truck Drivers v. Bhd. Labor Leasing, 207 F.3d 500, 505 (8th Cir. 2000). Assessing fines and attorneys' fees is part of the civil contempt power. Schoenfeld, 2007 WL 3256234, at *2. The party seeking civil contempt bears the burden of proving, by clear and convincing evidence, that the alleged contemnors violated a court order, and that the violation was not based on a good faith and reasonable interpretation of the protective order. Chicago Truck Drivers, 207 F.3d at 505; On Command Video, 976 F. Supp. at 922; see also Imageware, Inc. v. U.S. W. Commc'ns., 219 F.3d 793, 797 (8th Cir. 2000) ("No one should be held in contempt for violating an ambiguous order. . . ."). There is no requirement to show the violation was willful. Schoenfeld, 2007 WL 3256234, at *2.

The protective order, in plain, unambiguous language, declared that the confidential information was only to be used in "this action." (Doc. 40 at ¶ 7.) It reiterated that the confidential information was not to be used "for any [] other purpose," and that the confidential information was not be disclosed to anyone outside these proceedings. (Id. at ¶¶ 4-5, 7.)

Hennessy has clearly shown that Hunter failed to comply with either of these requirements. On June 30, 2009, the Snap-On arbitrator issued a subpoena to Hennessy, directing Hennessy to produce six types of documents. Hennessy objected to this subpoena, arguing the subpoena was requesting confidential documents protected by the protective order. This court refused to enforce the subpoena on jurisdictional grounds, and there is no evidence any other court has ordered Hennessy to comply with the arbitrator's subpoena. Under the protective order, "unless otherwise ordered by a court of competent jurisdiction, <u>there shall be no disclosure</u> of the subject matter objected to pursuant to the subpoena. . . ." (Doc. 40 at ¶ 14) (emphasis added).

On November 11, 2009, Hunter's lawyers provided Snap-On's lawyers and the arbitrator with confidential documents belonging to Hennessy. Hunter made these disclosures despite several objections from Hennessy's lawyers, and despite any court order enforcing the arbitrator's

subpoena.  More importantly, Hunter made these disclosures despite clear, unambiguous language in the protective order forbidding this exact type of disclosure.  Hennessy has clearly shown that Hunter failed to comply with the court's protective order, and that Hunter should be held in civil contempt.

**Sanctions for Civil Contempt**

A court may sanction a party held in civil contempt.  Kehm, 724 F.2d at 630; see also Eagle Comtronics, 305 F.3d at 1314 (finding district court abused its discretion for failing to sanction a party that had violated an unambiguous protective order).  In this case, an award of expenses and attorneys' fees is an appropriate sanction.  See Kehm, 724 F.2d at 630 (affirming district court's award of attorneys' fees arising from contempt proceedings); In re Biovail Corp., 247 F.R.D. at 71 (awarding attorneys' fees and expenses associated with bringing the action for violation of a protective order).

Hennessy shall be awarded its reasonable attorneys' fees and expenses associated with bringing this motion (Doc. 100) to show cause. Hennessy will not be awarded any attorneys' fees or expenses associated with defending against the motion to enforce the subpoena.  (See Doc. 99.)  Hennessy shall submit an affidavit supporting its attorneys' fees and expenses by April 26, 2010.  If necessary, Hunter may, in good faith, respond to the affidavit.  See In re Biovail Corp., 247 F.R.D. at 71.

**Modification of the Protective Order**

Hunter has withdrawn its motion to modify the protective order. (Doc. 115 under seal).

## CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion of defendant Hennessy Industries, Inc. to show cause (Doc. 100) is granted. Plaintiff Hunter Engineering Company clearly violated the express terms of the protective order.

**IT IS FURTHER ORDERED** that Hunter Engineering shall not use or disclose any of Hennessy's confidential documents in unrelated proceedings.

**IT IS FURTHER ORDERED** that Hunter Engineering shall return to Hennessy Industries, Inc. all of its confidential documents no later than April 19, 2010, and that it shall file a certificate of compliance with the court when it has accomplished this task.

**IT IS FURTHER ORDERED** that Hunter Engineering is held in civil contempt, and that it shall pay Hennessy Industries, Inc. its reasonable attorneys' fees and expenses related to bringing this motion to show cause. Hennessy shall submit an affidavit supporting its attorneys' fees and expenses by April 26, 2010. Hunter may file a response not later than May 17, 2010.

    /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 29, 2010.